IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ROCCO COLELLA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 15-cv-11829 |
| v. ) | |
| ) | Judge Robert M. Dow, Jr. |
| FIRST SECURITIES TRUST AND ) | |
| SAVINGS BANK and FORMAN REAL ) | |
| PROPERTY, LLC, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

Before the Court are Defendants First Securities Trust and Savings Bank's and Forman Real Property, LLC's motion to dismiss [10] and motion to strike Plaintiff's amended complaint [16]. For the reasons set forth below, Defendants' motion to strike [16] is denied and the motion to dismiss [10] is granted. Plaintiff is given until March 3, 2017, to file an amended complaint.

**I.   Background**

This case stems from the foreclosure of a property located on North Cumberland Avenue in Chicago, Illinois (the "Property"). On September 9, 2003, Defendant First Securities Trust and Savings Bank ("First Securities") made a residential loan of $119,200 to Plaintiff Rocco Colella and Giuseppe A. Verzillo that was secured by the Property. [1, at 3; 10-1, at 12.] It is unclear if Plaintiff resides at the Property. His driver's license and mail—both of which were attached as exhibits to the complaint—list a home address in Bartlett, Illinois. *Id.* at 28, 39, 63–66. To complicate matters, his complaint alleges that he has resided "for all times material to this complaint" in Naperville, Illinois (*id.* at 13, 23) as well as at the Property (*id.* at 1, 7, 18). Under "purpose of loan" on his mortgage application for the Property, Plaintiff checked the box "investment" instead of primary or secondary residence. [10-1, at 12.]

Plaintiff became delinquent on his mortgage in March 2009. [1, at 28.] On July 26, 2011, First Securities commenced foreclosure proceedings in the Circuit Court of Cook County. [1, at 51.] That foreclosure action remained pending for several years. On March 29, 2015, First Securities assigned the mortgage on the Property to Forman Real Property LLC ("Forman," collectively with First Securities, "Defendants"). [10-1, at 16–18.]

On December 30, 2015, Plaintiff filed a *pro se* complaint asserting claims under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 ("FDCPA"), the Truth In Lending Act, 15 U.S.C. § 1601 *et seq.* ("TILA"), as well as claims for identity theft. The complaint alleges that Forman and First Securities attempted to collect a debt from Plaintiff at an unspecified time but refused to provide certain information that Plaintiff requested and made unspecified false representations. The core of Plaintiff's allegations seem to be that Defendants falsely represented that they have a right to foreclose on the Property and are now "utilizing the statutory foreclosure process for this state for the purpose of engaging in a scheme that aims to conceal the identity, source, and destination of illicitly-obtained money." [1, at 4–5.] He claims that Defendants tricked him into giving up his personal information by "sending out what looks like official communications from banks * * * asking to confirm private personal information." *Id.* at 14. He also alleges that Defendants refused "to provide verification" of who they were when attempting to collect on Plaintiff's mortgage. *Id.* at 3. Furthermore, Plaintiff claims that he served a "notice to rescind" on First Securities on May 14, 2015. Because Defendant allegedly failed to respond within twenty days, Plaintiff claims that his mortgage obligations are void and Defendant violated TILA by not returning the Property and his money. *Id.* at 24–25.

Defendants filed a motion to dismiss on March 28, 2016 [10]. Plaintiff then amended his complaint on May 27, 2016 [15], but did not seek leave from Defendant or the Court before

doing so. Plaintiff's new complaint is identical to the original, except that he changed the title of his "identify theft" claims to "conversion." Otherwise, his substantive allegations are unchanged. Nevertheless, Defendants filed a motion to strike the amended complaint [16].

On June 9, 2016, the Circuit Court of Cook County entered a judgment of foreclosure on the Property. On October 25, 2016, the Property was sold and the Sheriff's sale was approved.

## II. Legal Standard

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, the complaint first must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), such that the defendant is given "fair notice of what the * * * claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)) (alteration in original). Second, the factual allegations in the complaint must be sufficient to raise the possibility of relief above the "speculative level." *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). Dismissal for failure to state a claim under Rule 12(b)(6) is proper "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly,* 550 U.S. at 558. In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court accepts as true all of Plaintiff's well-pleaded factual allegations and draws all reasonable inferences in Plaintiff's favor. *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007). The "documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim" and "may be considered by the district court in ruling on the motion to dismiss * * * without

3

converting [it] to a motion for summary judgment." *Wright v. Associated Ins. Cos. Inc.*, 29 F.3d 1244, 1248 (7th Cir. 1994).

## III. Analysis

### A. Motion to Strike

Before reaching Defendants' motion to dismiss, the Court first addresses Defendants' motion to strike the amended complaint [16]. Federal Rule of Civil Procedure 15 permits a party to amend its complaint once as a matter of course either within 21 days after serving it or 21 days after service of responsive pleading. Fed. R. Civ. P. 15(a)(1). "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Here, Plaintiff waited until May 27, 2016—sixty days after being served with Defendants' motion to dismiss—to file an amended complaint [15]. Plaintiff did not seek the Court's leave or Defendants' consent before doing so. For these reasons, Defendant moves to strike the amended complaint [16].

Rule 15 also directs that courts "should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). "This liberal policy of granting amendments is based in part on the belief that decisions on the merits should be made whenever possible, absent countervailing considerations." *Olech v. Vill. of Willowbrook*, 138 F. Supp. 2d 1036, 1040 (N.D. Ill. 2000) (citation omitted). A court should give leave to amend "'[i]n the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, [or] futility of amendment.'" *Barry Aviation, Inc. v. Land O'Lakes Mun. Airport Comm'n*, 377 F.3d 682, 687 (7th Cir. 2004) (citation omitted). Courts also hold *pro se* submissions to a less stringent standard than formal pleadings drafted by lawyers, and liberally grant *pro se* plaintiffs the opportunity to amend their

complaint. *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009); *Grady v. Ocwen Loan Servicing, LLC*, 2014 WL 231952, at *4 (N.D. Ill. Jan. 21, 2014). Ultimately, "'[t]he decision to grant or deny a motion to file an amended pleading is a matter purely within the sound discretion of the district court.'" *Soltys v. Costello*, 520 F.3d 737, 743 (7th Cir.2008) (citation omitted).

Consistent with the liberal policy underlying Rule 15 and the fact that Plaintiff is proceeding in this case *pro se*, the Court will permit Plaintiff to amend his complaint. As Defendants acknowledge, the differences between the original and amended complaints are almost entirely cosmetic. Plaintiff continues to pursue the same claims with same allegations except that his two identify theft claims are now restyled as conversion claims. Defendants do not claim that have any suffered any prejudice because of substance of these specific changes. In fact, none of the arguments raised by the motion to dismiss are impacted by the amendments. Accordingly, the Court permits Plaintiff to file an amended complaint and denies Defendants' motion to strike [16].

### B. Motion to Dismiss

Defendants advance several arguments to dismiss.[1] With respect to Plaintiff's FDCPA claims (Counts I and II), Defendants argue that Plaintiff's investment-related debt falls outside

---

[1] One issue not raised by Defendants is whether the Court lacks subject matter jurisdiction under the *Rooker-Feldman* doctrine. *Rooker-Feldman* provides that lower federal courts lack authority to hear "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). When Plaintiff filed his complaint here, the Circuit Court of Cook County had not yet entered judgment. Thus, while many of Plaintiff's claims touch on issues addressed in his state foreclosure case, Plaintiff does not directly seek federal review of that judgment. Moreover, the fact that the state court entered judgment and foreclosed on the Property while this case has been pending does not divest the Court of jurisdiction, although issues or claims related to this judgment may be subject to preclusive effect. As the Supreme Court explained, "[N]either *Rooker* nor *Feldman* supports the notion that properly invoked concurrent jurisdiction vanishes if a state court reaches judgment on the same or related question while the case remains *sub judice* in a federal court. Disposition of the federal action, once the state-court adjudication is complete, would be governed by preclusion law. * * * In parallel litigation, a federal court may be bound to recognize the claim- and issue-preclusive effects of a state-court judgment, but federal

the scope of the FDCPA, his claims are barred by the FDCPA's one-year statute of limitations, and the complaint lacks sufficient detail to state a claim. Regarding the TILA claim (Count V), Defendants argue that Plaintiff's right to rescind has extinguished. And concerning the identity theft/conversion claims (Counts III and IV), Defendant argues that the parties lack diversity and Plaintiff fails to state a claim. The Court starts with Plaintiff's FDCPA claims.

### 1. FDCPA claims

The purpose of the FDCPA is "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). Plaintiff cites a handful of sections from the FDCPA in his complaint that appear to form the basis for his claims. [See 15, at 6, 12.] Specifically, Sections 1692e(4) and 1692e(5) of the Act prohibit "[t]he representation or implication that nonpayment of any debt will result in the arrest or imprisonment of any person or the seizure, garnishment, attachment, or sale of any property or wages of any person unless such action is lawful and the debt collector or creditor intends to take such action" and "[t]he threat to take any action that cannot legally be taken or that is not intended to be taken." Sections 1692g(a) requires that a debt collector provide specific information to the consumer in either its initial debt collection communication or another written notice sent within five days of the first communication. The required information includes "the amount of the debt" and "the name of the creditor to whom the debt is owed." 15 U.S.C. § 1692g(a)(1)–(2). If the consumer requests validation of the debt, Section 1692g(b) requires debt collectors either to provide the requested validation or cease their debt collecting activities. *Jang v. A.M. Miller & Assocs.*, 122

---

jurisdiction over an action does not terminate automatically on the entry of judgment in the state court." *Exxon Mobil*, 544 U.S. at 292–93.

F.3d 480, 483 (7th Cir. 1997). The statute of limitations on a FDCPA claim is one year "from the date on which the violation occurs." 15 U.S.C. § 1692k(d).

Plaintiff makes identical FDCPA allegations against both Defendants. Essentially, he argues that Defendants used a fake name when trying to collect on his mortgage, misrepresented their right to collect under the mortgage, refused to provide an accounting of the unpaid balance on the mortgage, and threatened to undertake a foreclosure action when they had no right to do so. Plaintiff's complaints lack any details to substantiate these allegations.

Under Rule 8(a)(2), a complaint must "give the defendant fair notice of what the * * * claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (citation omitted); Fed. R. Civ. P. 8(a)(2). Said differently, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). Plaintiff's amended complaint does not surpass this threshold. What communication did Defendants send that violated the FDCPA? When did these violations occur? What fake or fictitious name did Defendants use? How did they misrepresent their right to collect under the mortgage or threaten to foreclose on the mortgage? The amended complaint does not answer any these questions. It also does not include any specific allegations about Forman. A complaint that merely recites different statutory provisions and vaguely claims they are all violated is not sufficient, even for a *pro se* plaintiff. See *Ashcroft*, 556 U.S. at 678.

The only seeming factual support that can be found in the amended complaint is a single "late notice" that First Security sent Plaintiff in April 2011. [See 15, at 30.] That notice uses First Security's name and lists the amount of the outstanding debt, including interest owed. As Plaintiff concedes, his mortgage is "payable to FIRST SECURITIES TRUST AND SAVINGS BANK, the lender stated on the mortgage." [15, at 3.] Plaintiff does not identify how First
7

Security made any misrepresentations in this notice. Similarly, this notice does not threaten foreclosure. But even if it did, First Security initiated foreclosure proceedings later that year and secured a foreclosure judgment in 2016. Finally, assuming Plaintiff could overcome all of these hurdles, he still would be three years too late to pursue a FDCPA claim based on this 2011 notice because of the FDCPA's one-year statute of limitations. 15 U.S.C. § 1692k(d).

Therefore, Plaintiff has failed to state a claim upon which relief can granted and the Court grants Defendants' motion to dismiss Counts I and II without prejudice.[2] Defendants are free to address in a subsequent motion to dismiss whether claim or issue preclusion resulting from the state foreclosure proceedings bars Plaintiff's claims.

## 2. TILA claim

Congress enacted TILA "to assure meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various terms available to him and to avoid the uninformed use of credit and to protect the consumer against inaccurate and unfair credit billing and credit card practices." 15 U.S.C. § 1601(a). TILA provides borrowers with the unconditional right to rescind a loan within three business days following "the consummation of the transaction." 15 U.S.C. § 1635(a). "Consummation means the time that a consumer becomes contractually obligated on a credit transaction." 12 C.F.R. § 226.2(a)(13); accord *Elias v. Stewart Title of Ill.*, 2011 WL 1157534, at *2 (N.D. Ill. Mar. 29, 2011) ("[Plaintiff] consummated his loans on the date that he signed and closed them."). If the creditor fails to comply with TILA's various disclosure requirements, the statute extends the borrower's

---

[2] Defendants also argue that Plaintiff's mortgage was not for an "investment" property, which they assert falls outside the scope of the FDCPA [10-1, at 4–5]. "Many courts have founds that the FDCPA does not apply to debts associated with investment properties because the debt was not incurred for '*personal, family, or household purposes.*'" *Akinfaderin-Abua v. Dimaiolo*, 2014 WL 345690, at *3 (D.N.J. Jan. 30, 2014) (collecting cases); 15 U.S.C. § 1692a(5). Although the Court does not reach this issue, Plaintiff is advised to include factual allegations in any amended complaint about the reasons he took out the mortgage on the Property, whether it was an investment property, and whether it is his primary residence.

8

conditional right to rescind to three years after consummation. 15 U.S.C. § 1635(f); *Jesinoski v. Countrywide Home Loans, Inc.*, 135 S. Ct. 790, 792 (2015).

Here, Plaintiff's residential mortgage with First Securities was consummated on September 9, 2003. Plaintiff alleges that he served his notice to rescind on Defendant on May 14, 2015 [15, at 25]—almost twelve years later. Even assuming that First Securities failed to make its required TILA disclosures, Plaintiff's right to rescind was extinguished on September 9, 2006. This result is not changed by the amended complaint's conclusory assertion that Plaintiff's claim is "not barred by any statutory time limits because of the Doctrine of Equitable Tolling" and he was "actively misled by the defendant about the cause of action or was extraordinarily presented from asserting his rights." *Id.* at 26. TILA's three-year limit is a statute of repose, which means it is not subject to equitable tolling. Accord *Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 412 (1998) (Section "1635(f) completely extinguishes the right of rescission at the end of the 3-year period."); *Cosey v. Ameriquest Mortg.*, 2011 WL 5828191, at *6 (N.D. Ill. Nov. 18, 2011) ("In other words, the three-year period is not subject to tolling doctrines but marks a final, unwavering deadline for rescission claims"); *Alda v. SBMC Mortg.*, 2012 WL 10589, at *3 (N.D. Cal. Jan. 3, 2012) ("The three-year period is not subject to equitable tolling."); see also *Augutis v. United States*, 732 F.3d 749, 752–53 (7th Cir. 2013) ("A statute of repose by contrast is substantive. It extinguishes any right to bring any type of cause of action against a party, regardless of whether such action has accrued."). Thus, Plaintiff lacked a right to rescind when he attempted to assert one in May 2015, and First Securities is not liable under TILA for failing to honor that non-existent right.

Plaintiff asserts no other TILA violation other than the failure to honor his right to rescind and the Court does not see how a further opportunity to amend would cure this defect.[3] Accordingly, Plaintiff's TILA claim (Count V) is dismissed with prejudice.

### 3. Conversion Claims

Plaintiff's remaining two claims (Counts III and IV) are for conversion. Specifically, Plaintiff alleges that Defendants "acquired the plaintiff's property which includes but is not limited to, credit records, financial information, banking information, and other personal and private identifying information, known as the 'plaintiff's likeness,' without authority." [15, at 13.] The amended complaint invokes both federal question and diversity jurisdiction for these claims. *Id.* Neither applies.

The "tort of conversion" is "plainly [a] claim[] under state law." *Verotix Sys., Inc. v. Follett Library Res.*, 235 F. Supp. 2d 851, 852 (N.D. Ill. 2002). It does not "aris[e] under the Constitution, laws, or treaties of the United States." 28 U.S.C. 1331. Diversity jurisdiction is also a non-starter. For jurisdiction to be founded on diversity of citizenship, there generally must be complete diversity of citizenship—that is, plaintiff cannot be a citizen of the same state as *any* defendant. See *LM Ins. Corp. v. Spaulding Enters. Inc.,* 533 F.3d 542, 546 n. 1 (7th Cir. 2008) Although the amended complaint lists multiple addresses for Plaintiff, they are all in Illinois.

---

[3] If Plaintiff's mortgage was, in fact, for "family, personal, or household purposes"—as he pleads for his FDCPA claim [15, at 2]—then he may have lacked the rescission rights in the first place. The right to rescind does not cover a "residential mortgage transaction," 15 U.S.C. § 1635(e)(1), which is defined as "a transaction in which a mortgage, deed of trust, purchase money security interest arising under an installment sales contract, or equivalent consensual security interest is created or retained in the consumer's principal dwelling to finance the acquisition or initial construction of that dwelling," 12 C.F.R. § 226.2(a)(24). See also 12 C.F.R. § 226.23(f)(1). Plaintiff does not specifically plead that the Property was his principal residence. Even so, Plaintiff does not offer much insight into how he can invoke a right to rescind under TILA for the mortgage on his non-principal dwelling and a right to sue for a non-investment property under the FDCPA.

[See 15, at 1, 13.] He also pleads that both Defendants are Illinois citizens. *Id.* at 1, 7. Thus, Plaintiff lacks diversity with either Defendant and diversity jurisdiction is unavailable.

Because Plaintiff's federal claims under the FDCPA and TILA are dismissed and there is no independent basis for federal jurisdiction over his state law conversion claims, the Court must consider if it will exercise supplemental jurisdiction over these claims. Where a district court has original jurisdiction over some claims, it has supplemental jurisdiction over other claims that are so related that they form part of the same case or controversy. 28 U.S.C. § 1367(a); *Miller v. Herman*, 600 F.3d 726, 738 (7th Cir. 2010). If the court has dismissed all claims over which it has original jurisdiction, the court's supplemental jurisdiction persists but it has discretion to decline to exercise supplemental jurisdiction. 28 U.S.C. § 1367(c)(3); *Miller*, 600 F.3d at 738 (noting that the decision to exercise supplemental jurisdiction is "squarely within [the district court's] discretion"). The general rule is that when all federal claims are dismissed, the district court should decline to exercise supplemental jurisdiction over the state law claims. *Davis v. Cook Cty.*, 534 F.3d 650, 654 (7th Cir. 2008) (quoting *Wright v. Associated Ins. Cos.*, 29 F.3d 1244, 1251 (7th Cir. 1994)). Three exceptions to this general rule exist:

> (1) when the statute of limitations has run on the pendent claim, precluding the filing of a separate suit in state court; (2) substantial judicial resources have already been committed, so that sending the case to another court will cause a substantial duplication of effort; or (3) when it is absolutely clear how the pendent claims can be decided.

*Id.* (citation and internal quotation marks omitted).

None of these exceptions applies here. This Court has only ruled on two preliminary motions and has not yet committed "substantial judicial resources" to considering the merits of Plaintiff's conversion claims. Moreover, the sole factual support for these conversion claims appears to be a loan modification request that Plaintiff entered into in 2013 with the Homeownership Preservation Foundation—a third-party non-profit counseling agency that is not

11

related to either Defendant. [See 15, at 16 (citing the written communications attached as Exhibit B), 32–50 (communications with the Homeownership Preservation Foundation)]. It is not clear if or how Plaintiff's claims relate to either Defendant or whether they would be barred by any applicable statue of limitations. See 735 Ill. Comp. Stat. 5/13-205 (establishing a five year statute of limitations for claims related to conversion of personal property). In these circumstances, the usual rule applies and dictates dismissal without prejudice of Plaintiff's state law conversion claims in Counts III and IV.[4]

## IV. Conclusion

For the foregoing reasons, the Court denies Defendants' motion to strike [16] and grants Defendants' motion to dismiss [10]. Plaintiff is given until March 3, 2017, to file a second amended complaint regarding his FDCPA and conversion claims if he believes that he can cure the deficiencies set out above. Plaintiff's TILA claim is dismissed with prejudice.

Dated: February 3, 2016

Robert M. Dow, Jr.
United States District Judge

---

[4] Although the Court does not reach these conversion claims, Plaintiff would be wise to provide specifics in any amended complaint that show how both Defendants allegedly converted his property.